UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| DAVID DONAT and BARBARA DONAT, | ) ) ) | CIV.   13-5052-JLV |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | **ORDER GRANTING DEFENDANT'S MOTION TO COMPEL** |
| TREK BICYCLE CORPORATION, | ) ) | [DOCKET NO. 25] |
| Defendant. | ) | |

**INTRODUCTION**

Plaintiffs David and Barbara Donat, husband and wife, filed this diversity action before this court alleging tort claims of strict liability, breach of warranty, negligence, and loss of consortium for injuries David received when both front forks of his bicycle, manufactured by defendant Trek Bicycle Corporation ("Trek"), snapped while he was riding it.   Trek has now filed a motion to compel the Donats to allow Trek's expert to inspect and photograph the subject bicycle using a scanning electron microscope.   See Docket No. 25.   The district court, the Honorable Jeffrey L. Viken, Chief United States District Judge, referred Trek's motion to this magistrate judge for resolution pursuant to 28 U.S.C. § 636(b)(1)(a).

## FACTS

The following brief facts are pertinent to Trek's motion.   On August 10, 2010, David Donat was riding a Trek Madone SSL 6.5 road bicycle on a highway in Montana.   While doing so, both of the carbon fiber front forks of the bike snapped.   Mr. Donat fell to the pavement and sustained serious injuries.

The Donats filed their complaint in this matter on July 16, 2013. See Docket No. 1.   Thereafter, the parties stipulated to a protective order concerning discovery that would be exchanged.

A brief background of the subject matter is helpful to have at this point. The carbon fiber forks of the Trek bike at issue are hollow inside and formed in two halves that are later joined.   The material the forks are made of are manufactured using layers or plies of carbon fiber which are held together with layers of resin.   The carbon fiber layers and resin are placed into a mold or "tool" and then subjected to high pressure and heat to bond the layers of carbon fiber and resin together.   The front half of the fork, which is the leading edge of the fork (also called the "net" side of the fork) is created in a mold separate from the back half or trailing edge of the fork (also called the "lap" side of the fork).   Once the two halves of the fork are formed, they are then joined together along both sides of the length of the fork.   The overlap of the two portions of the fork, when joined together, create an area of greater thickness in the material of the fork because there are two layers overlapping each other.

2

On January 14, 2014, both parties participated in a joint destructive testing of the front fork of Mr. Donat's bike at SEAL Laboratories in El Segundo, California.   The staff at SEAL Labs cut the fork near the fracture area pursuant to a protocol that both parties had previously agreed upon.   The cut surfaces were polished and the samples were then examined and photographed using a Hirox optical microscope.

On February 12, 2014, the Donats had the bike forks examined by Dr. Scott Beckwith using a scanning electron microscope ("SEM") at Brigham Young University.   This testing was done without notice to, or the participation of, Trek.

On March 7, 2014, the Donats filed their designation of experts.   See Docket No. 19.[1]   Plaintiffs' expert reports center on certain mistakes or problems that allegedly occurred during the manufacturing of the Trek forks on Mr. Donat's bike.   Specifically, the Donats' experts allege that the fork on Mr. Donat's bike was defectively manufactured because the places where the half of the fork constituting the leading edge of the fork were joined to the half of the fork constituting the trailing edge of the fork by overlapping the material from the two halves of the fork were lopsided and not symmetrical—that is, one side where the two halves met is a longer (wider) overlap than the overlap on the other

---

[1] The Donats later filed an amended designation of experts to include medical experts which had previously been omitted.   See Docket No. 24.   The medical experts are not pertinent to Trek's pending motion.

side where the two halves met.   See Docket No. 19-2, pages 16–21, and figures 21–23.

The Donats' experts also rely on the fact that there were voids between the layers of carbon fiber—air pockets—indicating that the process of binding the layers together was allegedly defective.   In addition, Dr. Beckwith asserts that there were layers of some unknown foreign material which were present between the carbon fiber and resin layers.   The Donats' experts opine that these manufacturing defects created areas of inherent weakness in the bike fork that caused it to fail.   See Docket Nos. 19-2, 19-3.

The Donats designated Scott Ganaja, a mechanical and manufacturing engineer, who based his opinions as to the alleged defects in the Trek bike forks on his physical examination of the entire bike as well as the Hirox examination of the bike forks which was done jointly in January.   See Docket No. 19-2.   The Donats also designated Dr. Scott Beckwith, an expert on composite materials with a PhD in Material/Interdisciplinary Engineering.   Dr. Beckwith's expert opinion incorporated the results of the SEM testing.   See Docket No. 19-3.

This layperson's perspective of the difference between the two examinations—the Hirox microscope and the SEM microscope—appears to be a difference in degree.   The images from the Hirox microscope show the material from the cross-sections of the bike fork in grosser terms.   See e.g. Docket No. 19-2, page 17, Figure 21.   The images from the SEM are images of higher magnification, sometimes much, much higher, showing the actual material the

4

fork was made of, including the character and shape of the material at the site of the fracture on the fork.   See e.g. Docket No. 19-3, page 8, Figure 6; page 9, Figure 8; and page 17, Figures 20 and 21.

From the SEM images, Dr. Beckwith asserts that certain portions of the fork failed due to compression fracture because of certain physical appearances that are manifested at a particular location on the fracture site.   He opines that other portions of the fork failed due to tension failure, again because of the physical appearance of the carbon fibers at this location.   Id. at pages 15–21. These observations are key to Dr. Beckwith's conclusions about the sequence of events during Mr. Donat's accident and the cause of the fork failure on his Trek bike.   Id.   The differences in the physical appearance of the carbon fibers at different locations on the fractured fork are visible only from the SEM images. These differences in appearance of the carbon fibers are not apparent from the Hirox images.

After the Donats disclosed their experts, and thereby necessarily disclosed that they had conducted a SEM examination, Michael Hagg, one of Trek's lawyers in this lawsuit, sent an email to Heather Lammers, one of the Donats' lawyers, on April 18, 2014.   That email stated in its entirety:   "Please arrange to have the fork artifacts sent to Dr. John Kosmatka at the address below. Mr. Kosmatka will be doing further (visual only) inspections and photography." See Docket No. 27-1.   An address for Dr. Kosmatka was then listed.

5

Ms. Lammers then responded by email, "We can't risk the artifacts being damaged during shipping and/or a one-sided inspection."   <u>See</u> Docket No. 27-2. These two emails constitute the full extent of the parties' good faith attempts to resolve this discovery dispute prior to Trek filing the instant motion.   <u>See</u> Docket No. 28.

## DISCUSSION

### A.    Meet and Confer Requirement

Both the Federal Rules of Civil Procedure and this district's local rules of procedure require that parties meet and confer in an attempt to resolve discovery disputes before filing discovery motions.   <u>See</u> Fed. R. Civ. P. 37(a)(1); DSD LR 37.1.   A certification must be part of any discovery motion and the certification must show that a good-faith effort was made to resolve disputes before filing the motion.   <u>Id.</u>

Trek's efforts in this case to resolve the instant discovery dispute fall far short of what the federal and local rules contemplate.   For example, if Trek's lawyer had picked up the telephone and called plaintiffs' lawyer and suggested the inspection parameters that it now propounds in its reply brief, the discovery dispute may very well have been resolved at that point.   However, from the pleadings filed, it appears that these inspection parameters were never suggested by Trek until after its motion was filed.

Despite the fact that, in this court's estimation, Trek did not comply with the requirement to try, in good faith, to resolve this matter, the court

6

nevertheless will reach the merits.   To do otherwise would simply further delay
this lawsuit and there is an obvious answer to the motion.   A wise and efficient
use of judicial resources, as well as of the parties' resources, suggests that the
better decision is to simply resolve the issue now.

**B.     Trek is Entitled to Have the Bike Forks Examined Using SEM
Technology**

Plaintiffs have had the benefit, as custodians of the bike forks, to have the
forks examined and photographed using a SEM.   Trek has not had a similar
opportunity.   Plaintiffs allege that Trek has had many hours of access to the
bike forks for testing and examination and should not be given further access.
One has only to examine the photographs from the Hirox microscope and
compare them to the photographs from the SEM microscope to see the fallacy of
the plaintiffs' argument.   Clearly, if Trek is to offer up an expert who can counter
the opinions of Dr. Beckwith, it must be allowed to have an expert with similar
qualifications examine and photograph the bike forks under a SEM.   The images
seen with a SEM are very different than the images seen under a Hirox
microscope.   The SEM images allow the formation of expert opinions different in
kind and quality from the expert opinions that can be formed by examining the
Hirox microscope images alone.   Further, the court is not going to require Trek
to rely upon the SEM images taken by Dr. Beckwith.   Trek's expert should be
allowed to verify the accuracy of the images created by Dr. Beckwith and may
wish to examine and photograph areas of the bike forks that are different from
those selected for examination by Dr. Beckwith.

The remaining issue, then, concerns the terms under which the bike forks should be transferred from the Donats to Trek.   Both parties have proposed terms for the transfer with the main difference between the terms being this: Trek wants the risk of loss of the forks to stay with the Donats until the forks are in Trek's expert's possession while the Donats want Trek to assume the risk of loss from the moment the forks leave their control.

The transfer of the forks is being done at the behest of Trek.   Trek should shoulder the risk of loss or damage to the forks for the entire time the forks are out of plaintiffs' possession.   Trek can purchase a short-term insurance policy to cover this risk of loss if it wishes.   In addition, the Donats should allow Trek to be present to view the method of packaging of the forks prior to their shipment to Trek's expert.   In this way, Trek can have input and can assure itself that the forks are packaged in a way so as to minimize the risk of damage.   Trek should also be allowed to have input into the method of shipment, for the same reason.

Finally, the court will not order Trek to allow plaintiffs or their experts to be present during SEM testing.   The testing consists of visual inspection and photography only and it is not destructive in nature.   Plaintiffs' expert conducted his SEM examination without any representative of Trek being present.   Trek is free, however, if it wishes, to allow plaintiffs' expert to be present.

## CONCLUSION

Based on the foregoing, it is hereby

ORDERED that defendant Trek Bicycle Corporation's motion to compel [Docket No. 25] is hereby granted.   Plaintiffs shall send the bike forks at issue in this case to Trek's designated expert at the address indicated.   Trek shall assume the risk of loss or damage to the forks for the entire time the forks are out of the plaintiff's possession.   Plaintiffs must allow Trek to be present and have input into the method of packaging the forks.   Plaintiffs must allow Trek to have input into the method of shipping of the forks.   Trek is responsible for the entire cost of shipping, round trip.

Plaintiffs must ship the forks within seven (7) days of the date of this order unless the parties mutually agree upon a different time frame for shipping.   Trek must return the forks to Plaintiffs within fourteen (14) days after the forks arrive at Trek's expert's location, unless the parties mutually agree upon a different time frame.   The method used for the return of the forks to plaintiffs must mirror the method of packaging and shipping used in sending the forks to Trek's expert.

## NOTICE OF RIGHT TO APPEAL

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.   The parties have fourteen (14) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1)(A), unless

an extension of time for good cause is obtained.   See FED. R. CIV. P. 72(a); 28

U.S.C. § 636(b)(1)(A) (2006).   Failure to file timely objections will result in the

waiver of the right to appeal questions of fact.   See FED. R. CIV. P. 72(a).

Objections must be timely and specific in order to require review by the district

court.   See Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990) (per curiam); Nash v.

Black, 781 F.2d 665 (8th Cir. 1986).

      Dated June 6, 2014.

                BY THE COURT:

                /s/ *Veronica L. Duffy*

                VERONICA L. DUFFY
                UNITED STATES MAGISTRATE JUDGE