**FILED**
JAN 22 2016


UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
WESTERN DIVISION

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

| | | |
|---|---|---|
| DAVID DONAT and <br> BARBARA DONAT, | \* <br> \* <br> \* | CIV 13-5052 |
| Plaintiffs, | \* <br> \* | MEMORANDUM OPINION AND <br> ORDER GRANTING IN PART |
| vs. | \* <br> \* | AND DENYING IN PART <br> DEFENDANT'S MOTION FOR |
| TREK BICYCLE CORPORATION, | \* <br> \* | PARTIAL SUMMARY JUDGMENT |
| Defendant. | \* <br> \* | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Before the Court is Defendant Trek Bicycle Corporation's (Defendant or Trek) Motion for Partial Summary Judgment, Doc. 65, on Plaintiffs David and Barbara Donat's (the Donats or Plaintiffs) claims of strict products liability (defective design, failure to warn, and inadequate warning), negligence (defective design, failure to warn, and inadequate warning), and breach of express and implied warranties. For the following reasons, Trek's motion is granted in part and denied in part.

### BACKGROUND

Plaintiffs are residents of Spearfish, South Dakota. Trek is incorporated under the laws of Wisconsin and has its principal place of business in Waterloo, Wisconsin. Some time prior to August 28, 2010,[1] Mr. Donat purchased a 2007 model Trek Madone bicycle, which is a carbon fiber model bicycle, for $4,865.40 from Rushmore Mountain Sports in Spearfish. In his deposition, Mr. Donat states that he was not comparing other bikes from other manufacturers. He desired only to purchase the highest quality Trek bicycle he could for $5,000. Doc. 68-2 at 2. One of the reasons Mr. Donat intended to purchase the Trek model was that he understood that the "better bikes[, such as the 2007 Madone,] tend to run [the] higher end component set[]" that Mr. Donat wished to use.

---

[1] The record does not indicate on what date specifically the bicycle was purchased. It is undisputed, however, that the bike had no more than 500 miles worth of use at the time of the accident.

*Id.* To Mr. Donat's knowledge, the Trek model used a "Dura Ace" component set, which he believed was high quality and would allow the bike to shift gears easily. While Mr. Donat had experience with that type of component set and bicycles, generally, he "didn't know anything about the carbon bikes." *Id.* Mr. Donat further stated that he did not rely on any publications or information from Trek in deciding to purchase the 2007 Madone. He did, however, "ask[] what the model numbers [] mean or are[]" while he was at Rushmore Mountain Sports. *Id.* Mr. Donat claims that he "was probably in the bike shop a couple of times during [the] course of looking into and deciding which bike to purchase." *Id.*

On August 28, 2010, Mr. Donat was operating the 2007 Madone on a highway near Red Lodge, Montana. While doing so, both prongs of the bicycle's front fork broke in half. As a result, Mr. Donat was propelled off the bicycle onto the highway and was rendered unconscious. Mr. Donat regained consciousness as he was being lifted into an ambulance. He was then taken to the Red Lodge Hospital and later transferred to Billings Clinic Hospital in Billings, Montana. Mr. Donat remained in Billings for two days. As a result of the accident, Mr. Donat suffered injuries to his neck and back, including fractured and compressed vertebrae. He also suffered abrasions on his face, neck, chest, hands, and knees. Due to his injuries, Mr. Donat has incurred lost wages and medical expenses. The medical expenses are expected to grow due to Mr. Donat's need to address scarring on the injured parts of his body. Mr. Donat's Complaint also alleges that he has suffered, and will continue to suffer, great physical pain, mental and emotional anguish, and impairment of the capacity to enjoy life.

The first responder on the scene of the accident, Larry Reinlasoder (Reinlasoder), was an off-duty Chief of Police. In Reinlasoder's deposition, he states that the accident occurred during a clear day, with no inclement weather. Doc. 71-2 at 4. Reinlasoder stated that he was driving South on U.S. Highway 212 when he came across Mr. Donat, who was "tangled up in a bicycle on the west side of the road on the shoulder." *Id.* at 3-4. Reinlasoder did not witness the accident, but claimed that there were no obstructions on or imperfections in the road that would have caused Mr. Donat to crash. According to Reinlasoder, "That's a well-maintained stretch of highway there." *Id.* at 8. Reinlasoder is not an accident reconstructionist, however, and it was not his official role to

2

investigate the scene of the accident. According to Reinlasoder, in his role as a law enforcement officer, he has investigated one to two dozen bike accidents in his career.

In a letter dated December 2, 2010, Mr. Donat notified Trek of the accident. Between that date and April 7, 2011, Mr. Donat was in contact with Jeff Grotjahn (Grotjahn), a Trek official, relative to the accident. On February 15, 2011, Grotjahn emailed Mr. Donat disclaiming Trek's liability. Plaintiffs' action followed on July 16, 2013. The Complaint alleges claims of strict liability, negligence, breach of express and implied warranties, and loss of consortium. Trek has moved for summary judgment on Plaintiffs' strict liability defective design and negligent defective design claims as well as the strict liability failure to warn, strict liability inadequate warning, negligent failure to warn, and negligent inadequate warning claims due to Plaintiffs' failure to proffer expert witness testimony.[2] Furthermore, Defendant has moved for summary judgment on Plaintiffs' breach of express and implied warranty claims.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be . . . disputed must support the assertion" either by "citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the . . . presence of a genuine dispute[.]" Fed.R.Civ.P. 56(c)(1)(A)-(B). "The movant can also establish the absence of a disputed material fact by showing 'that an adverse party cannot produce admissible evidence to support the fact.'" *Jensen v. Hy-Vee Corp.*, No. CIV. 09-4057-KES, 2011 WL 1832997, at *1 (D.S.D. May 13, 2011) (quoting Fed.R.Civ.P 56(c)(1)(B)). "The burden is initially placed on the moving party to establish the absence of a genuine issue of material fact and that the party is entitled to judgment as a matter of law." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Once the party seeking summary judgment has met this initial burden, the

---

[2] Plaintiffs have two witnesses they intend to offer as experts at trial: Scott Ganaja and Dr. Scott Beckwith. Ganaja, Plaintiffs' manufacturing defect expert, stated in his deposition that he did not intend to opine on a design defect theory. Defendant's Brief in Support of Motion for Partial Summary Judgment at 4 (quoting from Ganaja's deposition). Similarly, Beckwith stated in his deposition that he did not offer an opinion on warnings in the report he prepared for Plaintiffs' case. *Id.* at 6 (quoting from Beckwith's deposition). In Defendant's Reply Brief, it emphasizes that it is only attacking the defective design and warning claims on the basis of a lack of expert testimony. Defendant has not moved for summary judgment on Plaintiffs' manufacturing defect claims or loss of consortium claim. Plaintiffs other witnesses have not been designated as experts.

3

burden then shifts to the non-moving party who must demonstrate "that a fact . . . is genuinely disputed" either "by citing to particular parts of materials in the record," or by "showing that the materials cited do not establish the absence . . . of a genuine dispute." Fed.R.Civ.P 56(c)(1)(A)-(B). "For purposes of summary judgment, the facts, and inferences drawn from those facts, are 'viewed in the light most favorable to the party opposing the motion.'" *Jensen*, 2011 WL 1832997, at *2 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

"In determining whether a genuine issue for trial exists, the court applies the standard and burden associated with the applicable substantive law." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)). Because the present case is before the Court on the basis of diversity jurisdiction, South Dakota substantive law applies. *Id.* (citing *Hammonds v. Hartford Fire Ins. Co.*, 501 F.3d 991, 996 n. 6 (8th Cir. 2007)).

## DISCUSSION

### Defective Design

A manufacturer can be held liable for an alleged defective design of its product under the alternate theories of negligence or strict liability. *See Burley v. Kytec Innovative Equipment, Inc.*, 737 N.W.2d 397, 407-08 (S.D. 2007). To prove a claim in negligence, "a plaintiff must show that the defendant failed to use the amount of care in designing or manufacturing the product that a reasonably careful designer or manufacturer would use in similar circumstances to avoid exposing others to a foreseeable risk of harm." *Id.* at 407 (citing Restatement (Second) of Torts § 395). As to the alternate theory of strict liability, it is established "when a manufacturer 'sells any product in a defective condition unreasonably dangerous to the user or consumer . . ..'" *Id.* at 408 (quoting *Peterson v. Safway Steel Scaffolds Co.*, 400 N.W.2d 909, 912 (S.D. 1987)). What distinguishes a theory of strict liability from negligence "'is [that] the unreasonableness of the condition of the product, not of the conduct of the defendant, [] creates liability.'" *Id.* (quoting *Peterson*, 400 N.W.2d at 912). In addition to the above, both theories also require a showing of causation. Notwithstanding the distinctiveness of the two theories, Defendant argues that South Dakota requires expert witness testimony in order to present either theory to a jury. In resisting the argument, Plaintiffs argue that

South Dakota precedent only requires expert testimony as to the element of proximate cause and, even then, it is only required when it is shown that the consumer altered or misused the product.

Since this Court is sitting in diversity, South Dakota substantive law applies and, therefore, *Burley v. Kytec Innovative Sports Equipment, Inc.*, 737 N.W.2d 397 (S.D. 2007), provides guidance on the issue of when and to what extent expert testimony is required. The Court agrees with Plaintiffs insofar as the *Burley* court holding pertains to proximate cause in either negligence or strict liability actions. In that context *Burley* indicates that circumstantial evidence may be used in the absence of expert testimony. *See Burley*, 737 N.W.2d at 411 ("Had the product not been altered before the accident, Burley may have had sufficient evidence *without expert testimony* because absent a misuse or alteration it may be reasonable to infer the [product] was the *legal or proximate cause* of her injuries.") (emphasis added). The South Dakota Supreme Court did not relieve plaintiffs completely from the necessity of offering expert witness testimony on issues of proximate cause. The court stated that:

> unless it is patently obvious that the accident would not have happened in the absence of a defect, a plaintiff cannot rely merely on the fact that an accident occurred. It is not within the common expertise of a jury to deduce merely from an accident and injury that a product was defectively designed.

*Burley*, 737 N.W.2d at 407 (internal citations omitted).

### Negligent Defective Design

Specific to a negligent defective design claim, however, the South Dakota Supreme Court held, "'Whether a manufacturer knew or should have known of a particular risk involves technical issues which do not easily admit of evidentiary proof and which lie beyond the comprehension of most jurors.'" *Id.* at 407 (quoting *Peterson*, 400 N.W.2d at 913). Thus, the South Dakota Supreme Court bifurcated the relative need for expert testimony into two main tiers of a negligence claim: what a reasonably prudent person knew or should have known and proximate cause. The former requires expert testimony while the latter may not.

The United States District Court for the District of South Dakota, interpreting *Burley* in *Jensen v. Hy-Vee Corp.*, No. CIV. 09-4057-KES, 2011 WL 1832997, at *3 (D.S.D. May 13, 2011), similarly bifurcated the expert witness issue into the two components of a negligent defective design claim. On the issue of knowledge, the court under the facts in *Jensen* "agree[d] with the reasoning in *Burley* and [found] that [the plaintiff's] defective design claim require[d] expert testimony demonstrating that the door contained a design defect."[3] *Jensen*, 2011 WL 1832997, at *3. Likewise, this Court finds that South Dakota law in most instances requires expert testimony in order to prove a negligence claim that a manufacturer knew or should have known that a product line contained a design defect and failed to act as a reasonably prudent person. On this issue, however, Plaintiff has offered no expert testimony. The Court is not applying *res ipsa loquitur*. Under South Dakota law *res ipsa loquitur* applies only to the negligence issue, not causation. *Malloy v. Commonwealth Higland Theatres, Inc.*, 375 N.W.2d 631, 636 (S.D. 1985).

Plaintiffs' manufacturing defect expert explicitly disclaimed that he was opining on the issue of defective design. As the *Burley* court held, without such testimony a jury likewise under the facts in this case would be incapable of resolving the technical issues that are inherent to a negligent defective design claim. While a jury may be permitted to determine proximate cause in the absence of expert testimony, it cannot resolve the knowledge issue without such testimony. *See Dancy v. Hyster Co.*, 127 F.3d 649, 654 (8th Cir. 1997) ("[A]bsent expert testimony, there is no basis for the jury to evaluate the actions of an ordinarily prudent person in the same situation as [the defendant]."). Thus, Plaintiffs' negligent defective design claim cannot proceed and Defendant's Motion for Summary Judgment on Plaintiffs' negligent defective design claim is granted.

### Strict Liability Defective Design

A claim of defective design based in strict liability is similarly bifurcated. The *Burley* court held that a plaintiff must establish both "that the [product] 'was in a dangerous and defective

---

[3] The Court notes that Defendant's citation to this quote is misplaced. Specifically, Defendant cites to the quote for the proposition that the *Jensen* court was extending *Burley's* expert testimony requirement to a strict liability defective design claim. See Defendant's Reply Brief at 4. The *Jensen* quote, however, plainly was in the context of negligence. First, the quote is from Part I.A. of the *Jensen* opinion, which is a discussion of a negligent defective design claim. Second, the quote was, more specifically, related to a discussion of what "'a manufacturer knew or should have known [about] a particular risk . . .'" *Jensen*, 2011 WL 1832997, at *3 (quoting *Burley*, 737 N.W.2d at 407). As discussed, the lack of a knowledge or should have known requirement distinguishes strict liability from negligence.

6

condition when it left the manufacturer,'" *Burley*, 737 N.W.2d at 408 (quoting *Engberg v. Ford Motor Co.*, 205 N.W.2d 104, 109 (S.D. 1973)), and that the proximate cause of the plaintiff's injury was the design defect and not an alteration in or misuse of the product. *Id.* at 408-09 (quoting SDCL § 20-19-10).

In *Burley* the defective design claim was based on a complicated theory of causation. The issue was whether the defendant failed to test and inspect its product with regard to the dangerousness of a hook that could be bent by a user. The release hook had been bent by a coach before the student plaintiff used the device. This Court agrees with *Jensen* that the South Dakota Supreme Court's decision in *Burley* recognizes that expert testimony is required when there is a complicated causation issue in a products liability case.

*Jensen* also presented a complicated causation issue. There the automatic door at a grocery store closed as plaintiff was entering and knocked her to the ground. There was evidence that the breakaway switch had been subjected to extensive wear and tear by the door being pushed open from the inside. There was separate testimony that the door suffered some metal fatigue that may have prevented the door from functioning properly. Given those complications, the *Jensen* court found "that expert testimony is required to help the jury determine whether a subsequent alteration to the door or the alleged design defect caused Jensen's injuries. *Jensen*, 2011 WL 1832997, at *4.

In *Burley* there was an alteration to the product after manufacture. *Burley*, 737 N.W.2d at 407 cited *First Premier Bank v. Kolcraft Enterprises, Inc.*, 2004 S.D. 92, 686 N.W.2d 430:

> We do not require that plaintiff eliminate all other possible explanations of causation that the ingenuity of counsel might suggest. A plaintiff need only negate misuse of the product. *Id.* However, unless it is patently obvious that the accident would not have happened in the absence of a defect, a plaintiff cannot rely merely on the fact that an accident occurred. *Id.*

But, unlike *Burley* with the significant alteration by the post-manufacture bending of the hook in question, the present case presents none of that. Instead, so far the present case shows an experienced rider on a new $5,000 bicycle with little use and no abuse and on level, smooth surface and both extensions of the front fork snap, throwing the rider to the ground and injuring the rider.

This would not have happened in the absence of a defect. If the facts claimed above are proven at trial, Plaintiff will be able to prove that the Trek bicycle "'as in a dangerous and defective condition when it left the manufacturer.'" *Burley*, 747 N.W.2d at 408 (quoting *Engberg v. Ford Motor Co.*, 87 S.D. 196, 205, 205 N.W.2d 104, 109 (1973) disapproved on other grounds by *Smith v. Smith*, 278 N.W.2d 155 (S.D. 1979)). In the present case, no expert is needed to identify for the jury how the purportedly defective bicycle fork was the proximate or legal cause of Donat's injuries. In this case, Plaintiff does not have to prove that the injury was caused by a defect rather than an alteration of the bicycle, as no alteration has been shown.

> The *Burley* Court went on to say:
>
> Had the product not been altered before the accident, Burley may have had sufficient evidence without expert testimony because absent a misuse or alteration it may be reasonable to infer the Overspeed Trainer was the legal or proximate cause of her injuries.

*Id.* at 411.

Such is the case here. The strict liability claims for defect in the product including defective design, workmanship, construction, manufacture and materials will be presented to the jury.

## Inadequate Warning

Defendant also moves for partial summary on Plaintiffs' strict liability and negligent inadequate warning claims. *Nationwide Mutual Insurance v. Barton Solvents, Inc.*, 855 N.W.2d 145 (S.D. 2014) pleaded causes of action for strict liability and negligence as well as breach of express and implied warranty. *Barton Solvents* also presents a complicated factual picture. Heptane vapors were ignited by an electrical switch in the beeswax plant. With each delivery of heptane Barton Solvents gave plaintiff a ten-page document describing the volatile nature of heptane, listed its potential hazards, and provided other warnings. Plaintiff had a heptane explosion in 2004 and subsequently reconstructed the plant which exploded in 2009 and resulted in the lawsuit. In *Barton Solvents*, 855 N.W.2d at 151, the South Dakota Supreme Court held:

8

> Therefore, although Nationwide established a scientific possibility for the cause of the explosion, that evidence did not establish an evidentiary basis that the MSDC, NEC, and NFOPA 497 warnings were inadequate.

Although the South Dakota Supreme Court again recognized in *Barton Solvents*, 855 N.W.2d at 157 that there can be exceptions, the Court stated: "Expert testimony is generally necessary to establish elements of negligence and strict liability." In the present case there is no testimony, expert or otherwise, that any warnings were inadequate. The basis for Plaintiffs' inadequate warning claim is unclear. Plaintiffs have not explained how any inadequacy in the warnings accompanying the bicycle at sale caused or contributed to Plaintiffs' damages. The short answer to this claim is that the Court need not reach the issue on this inadequate warning claim of whether or not expert testimony is required because there is insufficient evidence to create a material issue of fact as to whether an inadequate warning, even assuming the warning was inadequate, caused Plaintiffs' injuries. The same conclusion applies to the strict liability inadequate warning claim.

## Failure to Warn

Next, Defendant, again on the basis of a lack of expert testimony, moves for summary judgment on Plaintiffs' strict liability and negligent failure to warn claims. To prove a claim of negligent failure to warn, a plaintiff has the burden of proof on six elements,

> (1) the manufacturer knew or reasonably should have known that the product was dangerous or was likely to be dangerous when used in a reasonably foreseeable manner; (2) the manufacturer knew or reasonably should have known that users would not realize the danger; (3) that the manufacturer failed to exercise reasonable care and adequately warn of the danger or instruct on the safe use of the product; (4) that a reasonable manufacturer under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product; (5) that the claimant was harmed; and (6) that the manufacturer's failure to warn or instruct was a proximate or legal cause of the claimant's injury.

*Burley*, 737 N.W.2d at 410 (citing Restatement (Second) of Torts § 388). It is clear, given the negligent failure to warn proof requirements that a reasonable manufacturer under the same or similar circumstances would have warned of the danger or instructed on the safe use of the product, that expert testimony would be required on at least that portion of the proof as how would a jury

9

know what a reasonable manufacturer would do in this instance? Accordingly, there being no expert testimony on warning at all, the negligent failure to warn claim is dismissed. In addition, even if expert testimony were not required, the Court finds that there is insufficient evidence to create a material issue of fact as to whether a lack of warning created Donats' injuries.

> Strict liability failure to warn requires a showing that
>
> (1) a danger existed associated with a foreseeable use of the product; (2) an inadequate warning was given regarding the danger; (3) as a result of the inadequate warning, the product was rendered defective and unreasonably dangerous; (4) the defective and unreasonably dangerous condition existed at the time it left the control of the manufacturer; (5) the product was expected and did reach the user without a substantial unforeseeable change in the condition that it was in when it left the manufacturer's control; and (6) the defective condition was the legal cause of [her] injuries.

*Id.* at 409 (internal quotations and citations omitted.)

In discussing strict liability for failure to warn, the *Burley* court made a distinction between proof needed on whether the Overspeed Trainer being the legal or proximate cause of plaintiff's injuries and whether the failure to warn claims could proceed without expert testimony. As for the Overspeed Trainer being the cause, the South Dakota Supreme Court recognized that absent the misuse or alteration of the Overspeed Trainer, "it may be reasonable to infer the Overspeed Trainer was the legal or proximate cause of her injuries." *Burley*, 737 N.W.2d at 411. However, as for the failure to warn claims, both strict liability and negligence, expert testimony was required in *Burley*. Likewise, in the present case, for inadequate warning as well as failure to warn, under South Dakota law expert testimony is required on both the negligence and strict liability claims. The reason the Court requires in this case that there be expert testimony on the failure to warn and inadequate warning claims and not on some other claims is that it is not patently obvious that the injuries would not have happened in the absence of a warning or an inadequate warning. Accordingly, expert testimony is necessary on the warning claims. There being no such testimony, all warning claims are dismissed.

## Express and Implied Warranties

Beyond the expert witness requirement, Defendant also moves for summary judgment on Plaintiffs' claims of breach of express warranty, breach of implied warranty of fitness for a particular purpose, and implied warranty of merchantability. Each will be discussed in turn.

As to the express warranty claim, Defendant argues that Plaintiffs' claim must fail as they did not rely on any statement made by Defendant when purchasing the bicycle. Reliance, Defendant urges, is a critical element that must be proven by a plaintiff in order to successfully present a claim of breach of express warranty to a jury. In opposition, Plaintiffs contend that, while no manual or oral statement was relied upon, the owner's manual received by Mr. Donat after purchasing the bicycle contains such an express warranty.[4] The owner's manual states, "Trek Bicycle Corporation warrants each new Trek bicycle frame and rigid forks against defects in workmanship and materials for the lifetime of the original owner." Plaintiffs' Brief in Opposition at 14 (quoting owner's manual). Moreover, Plaintiffs contend that SDCL § 57A-2-313(1)(b) does not require that a plaintiff rely on any statement made by a manufacturer. The section reads, "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." SDCL § 57A-2-313(1)(b). "[A] warranty is '[a] promise that the thing being sold is as represented[.]'" *Barton Solvents*, 855 N.W.2d at 152 (quoting *Black's Law Dictionary* (9th ed. 2009)) (second alteration in original).

In *Barton Solvents*, the South Dakota Supreme Court accepted that "invoices inform[ing] the purchaser to read [various other sources regarding safe usage of the product]" could effectively incorporate those other sources as express warranties. *See id. See also James River Equipment Co. v. Beadle County Equipment, Inc.*, 646 N.W.2d 265, 269 (S.D. 2002) ("Purchase agreements may incorporate by reference another document containing technical specifications for the product, *and this will likely create an express warranty by description*.") (internal quotes and citation omitted)(emphasis in original); *Drier v. Perfection, Inc.*, 259 N.W.2d 496, 502 (S.D. 1977) ("The law is clear that express warranties may be made in advertisements, pamphlets or brochures.") (citation omitted). The court rejected the materials as express warranties, however, and found them

---

[4] The owners' manual was received by Plaintiffs pursuant to a discovery request in this case.

11

to be, instead, warnings. *Barton Solvents*, 855 N.W.2d at 153. The case at bar is distinguishable on this point in that the owner's manual makes an express promise that the bicycle's frame and fork will be free of defects. The manual even uses the word "warrant." Thus, the owner's manual may constitute an express warranty. It must only be determined, therefore, if reliance is, as Defendant urges, an element that Plaintiffs must demonstrate in order to maintain the breach of express warranty claim.

The Court recognizes South Dakota Supreme Court case law that suggests reliance on the part of the buyer is a required element to form an express warranty. *See Schmaltz v. Nissen*, 431 N.W.2d 657, 661 (S.D. 1988) ("[I]t is clear that [] language [on the purchased bags of seed] did not in any way become the basis of the bargain. Both [Plaintiffs] admit that they purchased the seed prior to seeing the bag containing the seed. Neither read the language supposedly creating the express warranty until after the sale was completed."); *James River Equipment*, 646 N.W.2d at 268 (quoting 2 Deborah L. Nelson & Jennifer L. Howicz, Williston on Sales § 15-6, at 377 (5th ed. 1995)) ("'[T]he seller who affirms any fact or makes any promise concerning the goods which he or she is selling makes an express warranty, if the buyer, *relying on that affirmation or promise*, is induced to buy the goods.'") (emphasis added); *Crandall v. Larkin and Jones Appliance Co., Inc.*, 334 N.W.2d 31, 35-36 (S.D. 1983) (holding that a tag on a clothes dryer the day of a sale that represented that the dryer was a "Quality Reconditioned Unit," was "Tag-Tested," and was "Guaranteed" operated as an express ninety-day warranty). The South Dakota Supreme Court retreated from the reliance requirement, however, in *Barton Solvents*. There, A.H. Meyer purchased heptane, which is "a highly volatile and combustible solvent manufactured by CITGO Petroleum Corporation[]," for use in its honey and beeswax operation. *Barton Solvents*, 855 N.W.2d at 147-48. Barton Solvents was responsible for delivery of the product to A.H. Meyer. With each delivery, Barton Solvents provided A.H. Meyer with CITGO's Material Safety Data Sheet (the Data Sheet). The Data Sheet described the volatile nature of the heptane and proper handling precaution. After an explosion at A.H. Meyer's facility involving the heptane, Nationwide Mutual Insurance Company filed an action against CITGO and Barton Solvents for, *inter alia*, breach of express warranty.

On appeal to the South Dakota Supreme Court, Nationwide argued "that the heptane invoices informed the purchaser to read the [Data Sheet]." *Id.* at 152. The Data Sheet contained warnings that all electrical equipment used around the heptane should comply with national standards as described in the National Electric Code (NEC). The NEC further directed the purchaser to the National Fire Protection Association's (NFPA) instruction that there should be "five-foot spacing between heptane and standard electrical switches." *Id.* The five-foot directive, Nationwide argued, constituted "an instruction manual or description of the goods[]" and, since A.H. Meyer complied with that directive and an explosion still resulted, "the heptane did not conform to that description." *Id.* In rejecting the argument, the South Dakota Supreme Court held, "Although we agree with Nationwide that a warning could constitute a warranty in some cases, NFPA 497 was a recommendation to be used with sound engineering judgment. It was not an incorrect, affirmative promise." *Id.* at 152-53. Nowhere in its discussion of express warranty did the *Barton Solvents* court reiterate the test for express warranty found in *Schmaltz*. *See Schmaltz*, 431 N.W.2d at 660-61 ("In order to recover money damages for a breach of express warranty one must prove: (1) an affirmation of fact or promise made by the seller to the buyer relating to the goods; (2) such affirmation of fact or promise became a part of the basis of the bargain; (3) that the injured party, in making the purchase, relied on the representations, affirmations of fact or promises; (4) that the goods sold by the seller failed to comply with the promises or affirmations of fact made by the seller; (5) that the buyer, because of such failure, was financially injured; and (6) that such failure to comply was a proximate cause of the financial injury suffered by the buyer.") (internal quotes and citations omitted) (emphasis omitted). Moreover, discussion of reliance is also missing from *Barton Solvents*. Instead, the court, at the outset of the discussion, cited SDCL § 57A-2-313(b), and, in rejecting Nationwide's argument, held, "But here, as previously noted, the warnings did not affirmatively represent that heptane vapors would not explode if placed five feet from non-explosion proof switches." *Barton Solvents*, 855 N.W.2d at 153. *See* SDCL § 57A-2-313(b) cmt. 3 ("In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement."). Finally, in rejecting that *James River Equipment Co.* had any application, the court stated, "Because NFPA 497 did not provide affirmative representations or instructions

indicating heptane would not explode if its recommendations were followed, *James River Equipment Co.* is inapposite." *Barton Solvents*, 855 N.W.2d at 153.

Here, unlike the warnings at issue *Barton Solvents*, the owner's manual affirmatively "warrants" the bicycle's "frame and rigid forks against defects in workmanship and materials for the lifetime of the original owner." Thus, like the Data Sheet and invoices received by A.H. Meyer, the owner's manual was presented to Plaintiffs after purchase of the product. Furthermore, and favorable to Plaintiffs' express warranty claim, unlike the Data Sheet, invoices, and other material presented to A.H. Meyer, the owner's manual here expressed that it warranted the quality of the bicycle and, thus, operated as a warranty as opposed to a mere warning. Therefore, Defendant's motion for summary judgment on Plaintiffs' claim of breach of express warranty is denied.[5]

Next, Defendant argues that it is entitled to summary judgment on Plaintiffs' claim of breach of implied warranty of fitness for a particular purpose because Plaintiffs have failed to establish required elements of such a claim. Principally, Defendant asserts that Mr. Donat did not have a particular purpose for which the bicycle was purchased to satisfy. In addition, Defendant argues that, even if Mr. Donat had a particular purpose, such was not communicated to Defendant when it sold the bicycle to Mr. Donat.

Implied warranties are established in certain circumstances "by operation of law and are intended to hold vendors to a course of fair dealing. Implied warranties do not rest upon any supposed agreement in fact." *Virchow v. Univ. Homes, Inc.*, 699 N.W.2d 499, 505 (S.D. 2005) (internal quotes and citation omitted). As to an implied warranty of fitness for a particular purpose, "'Where the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods, there is . . . an implied warranty that the goods shall be fit for such purpose.'" *Barton Solvents*, 855 N.W.2d at 154 (quoting SDCL § 57A-2-315). When an implied warranty of fitness for a particular purpose is established, "'the seller must deliver a product that is fit for the

---

[5] Defendant also asserts that Plaintiffs failed to proffer expert witness testimony on the issue of causation as it relates to the express warranty claim. Defendant cites to no authority, and the Court is not aware of any, that South Dakota requires expert testimony in order to support causation on a breach of express warranty claim. The case law cited above all discussed the expert witness requirement within the confines of design defect, inadequate warning, and failure to warn. Therefore, the Court finds Defendant's argument to be without merit.

purpose for which it is intended.'" *Id.* (quoting *Virchow*, 699 N.W.2d at 505). "'The person asserting a violation of the warranty of fitness for a particular purpose must present sufficient evidence, direct or circumstantial, to permit the inference that the product was defective when it left the manufacturer's possession or control.'" *Id.* (quoting *Virchow*, 699 N.W.2d at 506). Comment one to SDCL § 57A-2-315 states further that:

> the buyer need not bring home to the seller actual knowledge of the particular purpose for which the goods are intended or of his reliance on the seller's skill and judgment, if the circumstances are such that the seller has reason to realize the purpose intended or that the reliance exists.

SDCL § 57A-2-315 cmt. 1.

In *Virchow*, the plaintiff, Diane Virchow, bought a home from the defendant, University Homes, Inc. d/b/a Happy Homes. During her time occupying the home, Virchow complained that the home's windows leaked and were difficult to open and shut. Virchow filed suit against University Homes for, *inter alia*, breach of implied warranty of fitness for a particular purpose. Finding against Virchow, the South Dakota Supreme Court held,

> Virchow did not present significant evidence that tended to show that the windows in her home were not fit for their intended purpose. There are many reasons a window could begin to leak. The mere fact that windows in a home begin to leak does not, by itself, establish that the home or the windows were not fit for the purpose for which they were intended at the time they were sold.

*Virchow*, 699 N.W.2d at 506. The court held similarly on the issue of the windows being difficult to open and close. The court did not, however, state that Virchow's claim failed due to the windows being used pursuant to a general purpose as windows. Instead, the court held that the evidence only showed that the windows operated as intended when purchased.

In any event, here, the Court agrees with Plaintiffs and finds that they have withstood summary judgment on the issue of the implied warranty of fitness for a particular purpose claim. The record shows that Mr. Donat intended to buy a high-quality bicycle that suited his needs. Specifically, deposition testimony shows that Mr. Donat intended to purchase the best Trek brand bicycle available for $5,000. *See* Defendant's Reply Brief at 13. In fact, Trek was the only brand

Mr. Donat intended to purchase. *See* Defendant's Brief in Support of Motion for Partial Summary Judgment at 11. Mr. Donat knew what type of shifting components he desired the bicycle to have, but had no knowledge specific to carbon fiber model bicycles. Mr. Donat visited Rushmore Mountain Sports on several occasions before purchasing the bicycle and, on one such occasion, asked what a certain model number designated. Defendant argues that these circumstances support both that Mr. Donat did not have a particular purpose in mind for which the bicycle was purchased and that, in any event, Defendant could not have known of a particular purpose. The Court disagrees and finds that these circumstances cut against Defendant. While Mr. Donat knew he was interested only in a Trek brand bicycle, the record does not show he had a specific model in mind. As noted, the record only shows that Mr. Donat wanted "to get the best Trek [he] could get for $5,000." Doc. 67 at 2. He also knew he wanted a bike with "high end component setup" and understood that "the better bikes tended to run that higher end component set." *Id.* at 3. In these circumstances, the Court finds that a logical inference exists that Defendant had reason to know that Mr. Donat intended to use the bike for long-distance trips. To be more specific, the need for easy-shifting components and selection of a light-weight bicycle suggests that Mr. Donat meant to use the bike for long-distance trips on highways or other low-gradient roadways. It was a high-end, specialized bike that a seller could reasonably believe was being purchased with the understanding that it could withstand these long-distance trips. Therefore, Defendant's Motion for Partial Summary Judgment on Plaintiffs' claim of implied warranty of fitness for a particular purpose is denied.

Finally, Defendant moves for summary judgment on Plaintiffs' breach of implied warranty of merchantability claim. Defendant asserts two primary reasons for why it is entitled to summary judgment and each will be dealt with in turn. First, Defendants argue that "'implied warranty [claims] ordinarily need not be submitted where strict liability and negligence are fully submitted . . . [S]trict liability is ordinarily in lieu of a theory of implied warranty, and both theories should be submitted only in 'exceptional circumstances.'" Defendant's Brief in Support of Motion for Partial Summary Judgment at 12 (quoting *McKnelly v. Sperry Corp.*, 642 F.2d 1101, 1105 (8th Cir. 1981)). In *Zacher v. Budd Co.*, 396 N.W.2d 122, 141 (S.D. 1986), the South Dakota Supreme Court applied *McKnelly* and held that "it was not reversible error for the [trial] court to refuse [to instruct the jury on implied warranty] in [the] case." *Zacher*, 396 N.W.2d at 141. The court also noted, however,

that "separate implied warranty instructions are favored and may be required in certain cases[.]" *Id.* The court appeared, therefore, to hold that South Dakota circuit courts are granted deference in choosing whether to submit strict liability and implied warranty claims together. In any event, the Court sees no need to dismiss the implied warranty claim on this ground.

Second, Defendant argues that Plaintiff has failed to supply expert testimony on the distinct issues of merchantability and causation. The Court disagrees that there is such a necessity. *Burley* and *Jensen*, while holding that expert witness testimony is required in most instances to support claims of negligence and strict liability, did not apply those same holdings in the implied warranty context. Neither case dealt with implied or express warranties. Additionally, *Barton Solvents* briefly discussed the plaintiff's claim of implied warranty of merchantability, however, that discussion did not include any expert witness requirement. *See Barton Solvents*, 855 N.W.2d at 154-55. In *Drier v. Perfection, Inc.*, 259 N.W.2d 496 (S.D. 1977), the South Dakota Supreme Court, when faced with claims of express warranty and implied warranty of merchantability, held,

> The burden of proof is on the plaintiff to show that there was a defect in the product at a time when the defendant had possession, control or responsibility for the condition of the product. A product is defective when it fails to perform reasonably and safely the function for which it was intended. No specific defect need be shown if the evidence, *direct or circumstantial*, permits the inference that the problem was caused by a defect.

*Perfection*, 259 N.W.2d at 504 (citations omitted) (emphasis added). Additionally, as noted above in the Court's discussion of strict liability and negligence, the South Dakota Supreme Court has held that causation on either of those claims may be proven circumstantially, in the absence of expert testimony. The Court finds, therefore, that causation, as it relates to an implied warranty of merchantability claim, and merchantability may, too, be established circumstantially and in the absence of expert testimony. Therefore, the Court denies Defendant's motion for summary judgment on Plaintiffs' implied warranty of merchantability claim.

In addition, Defendant argues that it is entitled to judgment on the pleadings on Plaintiffs' implied warranty of merchantability claim because Plaintiffs failed to properly plead notice. For this perceived pleading requirement, Defendant relies on *Jorgensen Farms, Inc. v. Country Pride Corp.,*

*Inc.*, 824 N.W.2d 410, 418 (S.D. 2012). Defendant's reliance, however, is misplaced. The *Jorgensen* court was interpreting SDCL § 57A-2-607(3)(a). The statute requires buyers in South Dakota to notify a seller of goods within a reasonable time "after [the buyer] discovers or should have discovered any breach." SDCL § 57A-2-607(3)(a). The statute, therefore, does not establish a pleading rule. The *Jorgenson* court held as much when it said, "'Notice is an element that must be specifically *proven*; it is not an affirmative defense' and '[notice] of breach by summons and complaint is obviously insufficient.'" *Jorgensen*, 824 N.W.2d at 418 (quoting *Hepper v. Triple U Enterprises, Inc.*, 388 N.W.2d 525, 529 (S.D. 1986)) (first alteration omitted)(second alteration in original). While the court may have noted the defendant's argument that notice was not pled,[6] it affirmed summary judgment on the basis that the plaintiff never provided notice. *Id.* ("Thus, Country Pride has not shown facts in the record to support its assertion that it provided reasonable notice, nor did our review of the record bear out this assertion. As a result, we affirm summary judgment on its breach of warranty claims on the basis that Country Pride failed to provide notice."). Therefore, the Court finds that notice need not be specifically pled by Plaintiffs and denies Defendant's motion for judgment on the pleadings.

## CONCLUSION

The Court denies summary judgment to Defendant on Count One of the Complaint pertaining to strict liability design defect for the reasons stated. However, under these facts, South Dakota law requires that claims of inadequate warning and failure to warn be proven through expert testimony. Because Plaintiffs have not offered expert testimony on the warning issues, the Court grants summary judgment to Defendant on Counts One and Three of the Complaint pertaining to inadequate warning and failure to warn. The remaining claims in Counts One (Strict Liability) and Three (Negligence) pertaining to design, workmanship, construction, and manufacture in both strict liability and negligence remain. Lastly, genuine issues of material fact exist on Plaintiffs' express and implied warranty claims and, thus, those claims also remain. Accordingly,

---

[6] Defendant cites to this language specifically for the proposition that notice must be pled. The language cited to in the *Jorgensen* opinion, however, was a quote from the third-party defendant's brief in that case. The entire quote reads, "Agrium argues that Country Pride 'never even pleaded notice in its complaint and cannot provide that it ever gave Agrium anything resembling notice of the breach it claims.'" *Jorgensen*, 824 N.W.2d at 418. The *Jorgensen* court then discusses only that no evidence was presented by the third-party plaintiff, Country Pride, to support the claim that it provided Agrium with notice. Defendant, therefore, improperly morphs the quoted language into a pleading requirement.

IT IS ORDERED:

1. That Defendant's Motion for Summary Judgment on Plaintiffs' strict liability defective design is denied.

2. That Defendant's Motion for Summary Judgment on Plaintiffs' negligent defective design claims is granted.

3. That Defendant's Motion for Summary Judgment on Plaintiffs' strict liability inadequate warning and negligent inadequate warning claims is granted.

4. That Defendant's Motion for Summary Judgment on Plaintiffs' strict liability failure to warn and negligent failure to warn claims is granted.

5. That Defendant's Motion for Summary Judgment on Plaintiffs' breach of express warranty claim is denied.

6. That Defendant's Motion for Summary Judgment on Plaintiffs' breach of implied warranty of fitness for a particular purpose claim is denied.

7. That Defendant's Motion for Summary Judgment on Plaintiffs' breach of implied warranty of merchantability claim is denied.

8. That Defendant's Motion for Judgment on the Pleadings on Plaintiffs' breach of implied warranty of merchantability claim is denied.

9. That the remaining claims of loss of consortium (Count Four) and defective design, workmanship, construction, and manufacture in the alternate theories of strict liability (Count One), and negligence (Count Three), also remain.

Dated this 21st day of January, 2016.

BY THE COURT:

*[signature]*

Lawrence L. Piersol
United States District Judge

ATTEST:
JOSEPH HAAS, CLERK

BY: *[signature]*
        Deputy